[Cite as *State v. Shropshire*, 2021-Ohio-3848.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO
:
:
Plaintiff-Appellee
: Appellate Case No. 29108
:
v.
: Trial Court Case No. CRB2002275
:
JACKIE SHROPSHIRE
: (Criminal Appeal from Municipal Court)
:
Defendant-Appellant
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of October, 2021.

. . . . . . . . . . .

ERIK R. BLAINE, Atty. Reg. No. 0080726, Assistant Prosecuting Attorney, City of Vandalia Prosecutor's Office, 245 James E. Bohanan Memorial Drive, Vandalia, Ohio 45377
    Attorney for Plaintiff-Appellee

MARY ADELINE R. LEWIS, Atty. Reg. No. 0099711, 712 North King Street, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Jackie Shropshire, appeals from her conviction in the

Vandalia Municipal Court after the trial court found her guilty of one count of assault.   In

support of her appeal, Shropshire contends that the State presented insufficient evidence at her bench trial to support her conviction. Shropshire also contends that her conviction was against the manifest weight of the evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On November 9, 2020, Shropshire was charged by criminal complaint with one first-degree-misdemeanor count of assault in violation of R.C. 2903.13(A). The charge stemmed from allegations that Shropshire physically attacked the mother of her two-year-old grandson outside the mother's Vandalia residence. Shropshire pled not guilty to the charge, and the matter proceeded to a bench trial on April 6, 2021.

{¶ 3} At trial, the State presented testimony from the alleged victim ("B.J.") and Officer Andrew Wehner of the Vandalia Police Department. The defense presented testimony from Shropshire's adult daughter, Taylor Shropshire. There is no dispute that Shropshire also has an adult son named JaQuan Shropshire, who is the father of B.J.'s two-year-old son. Shropshire, therefore, is the paternal grandmother to B.J.'s son.

{¶ 4} B.J. testified that on November 9, 2020, she was watching her children play in the yard of her Vandalia residence when Shropshire and Taylor pulled up in their vehicle. B.J., who was sitting in the driver's seat of her own vehicle with the driver-side door open, testified that Shropshire approached her vehicle while shouting profanities and threats at her. B.J. testified that she called 9-1-1 in response to Shropshire's conduct, but was unable to speak to the operator. B.J. testified that Shropshire then physically attacked her inside her vehicle, which led to a fight between her and

Shropshire. B.J. also testified that Taylor joined the fight, which gave Shropshire the opportunity to retrieve a metal car jack from the passenger side of B.J.'s vehicle. B.J. further testified that Shropshire began hitting her with the car jack shortly before the police arrived and broke up the fight.

{¶ 5} When asked if she had had any prior problems with Shropshire or Taylor, B.J. testified that she did not associate with either of them and that she did not start the fight. B.J. testified that JaQuan must have asked Shropshire and Taylor to stop by her residence, as B.J. noted that JaQuan was inside the residence at the time Shropshire and Taylor arrived. B.J. also testified that she received medical treatment at the hospital for injuries she sustained during the altercation, which included swelling on her head, shoulder, and back.

{¶ 6} Officer Andrew Wehner of the Vandalia Police Department testified that he was the officer who responded to the altercation in question. Wehner testified that the dispatcher sent him to the victim's residence due to a 9-1-1 open line on which females could be heard yelling in the background. Upon arriving at the scene, Wehner testified that he observed multiple people standing outside the victim's residence in a parking lot yelling at one another. Wehner testified that he had to give multiple commands for the parties to cease and desist for disorderly behavior. Wehner testified that he was able to identify Shropshire, Taylor, JaQuan, and B.J. at the scene.

{¶ 7} Continuing, Wehner testified that he took statements from the individuals involved in the altercation and received different stories from each side. Wehner, however, testified that there were multiple independent witnesses located at an adjacent apartment building who saw the altercation and gave statements corroborating B.J.'s

version of events. According to Wehner, the independent witnesses advised that B.J. was sitting in the driver's seat of her vehicle when Shropshire approached B.J. and started hitting her, which caused B.J. to fight back. Wehner also testified that B.J. had fresh, visible injuries on her head and shoulder. Wehner further testified that Shropshire's story changed a couple of times while he was interviewing her. Based on his investigation, Wehner testified that he determined Shropshire was the primary aggressor and cited her with first-degree-misdemeanor assault.

{¶ 8} Shropshire's daughter, Taylor, testified that on the day in question, JaQuan called her and asked her to pick him up at B.J.'s residence. Taylor testified that she and Shropshire thereafter drove to B.J.'s residence in Shropshire's vehicle. Taylor testified that when she and Shropshire arrived, JaQuan was outside with his and B.J.'s son. Taylor testified that B.J. began yelling at them because Shropshire's vehicle did not have a car seat for her son to ride in. According to Taylor, B.J. ordered them to get her son out of Shropshire's vehicle. Taylor testified that B.J. started swinging at Shropshire when Shropshire attempted to block B.J. from getting inside her vehicle. Taylor admitted that she then started to fight with B.J. in order to defend Shropshire. Taylor insisted that Shropshire was not directly involved in the fight, but was trying to break up the fight and protect her from B.J. Taylor also denied seeing a car jack during the altercation.

{¶ 9} Following this testimony, the parties made closing arguments during which Shropshire's counsel argued that the evidence demonstrated that Shropshire used force against B.J. for purposes of defending herself and Taylor. Shropshire's counsel also argued that the State failed to meet its burden to prove that Shropshire did not act in self-defense during the altercation. The trial court, however, determined that B.J.'s testimony

was credible and ultimately found Shropshire guilty of assault. After reaching its verdict, the trial court sentenced Shropshire to 180 days in jail with all 180 days suspended on the condition that Shropshire had no contact with B.J. and committed no criminal violations for one year. The trial court also ordered Shropshire to serve one year of probation and to pay a $50 fine and court costs.

{¶ 10} Shropshire now appeals from her conviction, raising two assignments of error for review. Because Shropshire's assignments of error are interrelated, we will address them together.

**Assignments of Error**

{¶ 11} Under her first assignment of error, Shropshire contends that her conviction for assault was not supported by sufficient evidence because the State failed to prove beyond a reasonable doubt that the force she used against B.J. was not in self-defense. Under her second assignment of error, Shropshire contends that her conviction was against the manifest weight of the evidence because the weight of the evidence established that she was acting in self-defense during the altercation. We disagree with each of Shropshire's claims.

{¶ 12} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to

the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 13} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "However, we may determine which of several competing inferences suggested by the evidence should be preferred." *State v. Moore*, 2d Dist. Montgomery No. 26304, 2016-Ohio-5267, ¶ 8, citing *Lawson* at *4. "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61 and 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14. A judgment of conviction

should be reversed as being against the manifest weight of the evidence only in exceptional circumstances.  *Martin* at 175.

{¶ 15} As noted above, Shropshire was convicted of first-degree-misdemeanor assault in violation of R.C. 2903.13(A).  That statute prohibits any "person [from] knowingly caus[ing] or attempt[ing] to cause physical harm to another or to another's unborn."  R.C. 2903.13(A).  In her appeal, Shropshire does not dispute that she assaulted B.J. on the day in question, but instead argues that the assault was the result of her defending herself and her daughter Taylor.

{¶ 16} It is well established that "[t]he defense of self-defense may exonerate an accused's admitted use of force."  *State v. Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, ¶ 4, citing R.C. 2901.05(B)(1).  Prior to March 28, 2019, self-defense was an affirmative defense that the defendant had the burden of proving by a preponderance of the evidence.  However, the enactment of 2017 Am.Sub.H.B. No. 228 realigned that burden of proof by amending R.C. 2901.05 to provide the following:

(A) * * * The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence presented as described in division (B)(1) of this section, is upon the accused.

(B)(1)  A person is allowed to act in self-defense, defense of another, or defense of that person's residence.  If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused

person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

**{¶ 17}** "Under R.C. 2901.05(B)(1) there are two burdens.   The defendant has the initial burden of production, which is the burden of producing evidence 'that tends to support' that the defendant used the force in self-defense."   *State v. Davidson-Dixon*, 8th Dist. Cuyahoga No. 109557, 2021-Ohio-1485, ¶ 18, quoting *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (11th Dist.), citing *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.   "The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense."   *Id.*   "To satisfy this burden, the state must disprove at least one of the elements of self-defense."   (Citation omitted.)   *Id.*; *State v. Fisk*, 2d Dist. Montgomery No. 28798, 2021-Ohio-1973, ¶ 49 (Tucker, P.J., concurring).   "Thus, in order to sustain its burden of proof, 'the state must demonstrate (1) that the defendant was at fault in creating the situation giving rise to the affray; [or] (2) that the defendant lacked a bona fide belief that he was in imminent danger of death or great bodily harm * * *; or (3) that the defendant violated a duty to retreat or avoid danger.' "   *Fisk* at ¶ 49, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 109221, 2021-Ohio-1185, ¶ 21, citing *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 258.

**{¶ 18}** In this case, B.J.'s testimony established that Shropshire was at fault in creating the physical altercation at issue.   Specifically, B.J. testified that Shropshire yelled profanities and threats at her, approached her vehicle, and began striking her while

she was sitting in the driver's seat. Officer Wehner's testimony also established that multiple independent witnesses corroborated B.J.'s version of events and that Shropshire was the primary aggressor. When viewed in a light most favorable to the State, this evidence establishes that Shropshire created the violent situation and thus was not acting in self-defense. Because there is evidence in the record establishing that Shropshire was not acting in self-defense, Shropshire's claim that the State failed to meet its burden of proof with regard to self-defense lacks merit.

{¶ 19} Shropshire's manifest weight claim also lacks merit. After weighing all the evidence and reasonable inferences, we do not find that the trial court clearly lost its way and created a manifest miscarriage of justice when it found Shropshire guilty of assault. The believability of the testimony was for the trial court to decide, and the trial court reasonably determined that B.J.'s testimony about the altercation was more credible than Taylor's. We will not disturb this finding on appeal. The fact that the trial court believed B.J.'s testimony over Taylor's does not mean that Shropshire's conviction was against the manifest weight of the evidence.

{¶ 20} For the foregoing reasons, Shropshire's conviction for assault was supported by sufficient evidence and was not against the manifest weight of the evidence. Therefore, Shropshire's first and second assignments of error are overruled.

**Conclusion**

{¶ 21} Having overruled both of Shropshire's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.


Copies sent to:

Erik R. Blaine
Mary Adeline R. Lewis
Hon. Cynthia M. Heck