[Cite as *State v. Woods*, 2022-Ohio-3339.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2021 CA 00132 |
| GAGE WOODS | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING: Criminal appeal from the Stark County
Court of Common Pleas, Case No. 2021
CR 0456

JUDGMENT: Affirmed


DATE OF JUDGMENT ENTRY: September 22, 2022


APPEARANCES:

For Plaintiff-Appellee

For Defendant-Appellant

KYLE STONE
Prosecuting Attorney
BY: VICKI L. DESANTIS
Assistant Prosecutor
110 Central Plaza South, Ste. 510
Canton, OH 44702

DONOVAN R. HILL
1122 Market Avenue North
Suite 101
Canton, OH 44702

*Gwin, P.J.*

{¶1} Defendant-appellant Gage Louis Woods ["Woods"] appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On April 16, 2021, the Stark County Grand Jury indicted Woods on two counts of Felonious Assault under R.C. 2903.11(A)(1)(A)(2)(D)(1)(a), felonies of the second degree, with an accompanying firearm specification for each count pursuant to R.C. 2941.145(A), and one count of Improper Handling Firearms in A Motor Vehicle, a felony of the fourth degree pursuant to R.C. 2923.16(A)(1), with an accompanying firearm specification pursuant to R.C. 2941.145(A).

{¶3} On October 7, 2021, Woods filed a notice in the trial court that he intended to offer evidence/testimony to establish that he acted in self-defense at the time of the commission of the offenses alleged in the indictment.

{¶4} A jury trial commenced on October 12, 2021.

{¶5} On February 8, 2021, Lynn Anderson and Woods communicated with each other via the "Telegram" messaging application and arranged to meet in Paris Township. The meeting was to take place in the parking lot of the Paris Israel Church. The meeting was for a drug transaction involving THC cartridges or "carts," which is liquid marijuana for vape pens. Anderson testified that he has known Woods for about one year. Anderson would see Woods every day or every other day to pick up marijuana. Anderson's friend Ridick Dourm accompanied him that day. Anderson testified he was driving his friend, Kayle Thomas's car, and it was a gray Chevy Malibu.

**{¶6}** Anderson originally pulled into the wrong parking lot. After messaging with Woods, Anderson realized the meeting was to take place at the parking lot across the street. When he arrived at the church parking lot, Woods was already in the parking lot. Anderson began to count his money and then to get out of the car when Woods lowered the window of his car and began shooting at Anderson's vehicle. Dourm was shot three times in his leg. Both vehicles left the parking lot. The incident was captured on the church's surveillance tapes. State's Exhibit 1.

**{¶7}** Dourm called his mother to tell her that he had been shot. 1T. at 293[1]. He then called 911, however, during the call he began to have difficulty breathing so he handed the phone to Anderson. Anderson originally informed the dispatcher that the shooting had occurred while he was getting his mail at the post office located across the street from the church parking lot. 1T. at 247-248. Anderson told the dispatcher to have the ambulance meet them at the Skyland Hills Trailer Park. Id. at 248. Anderson told the 911 dispatcher that he did not know the identity of the shooter.

**{¶8}** Anderson testified that after the ambulance arrived at the trailer park, Ridick was transported to the hospital, and he was transported in the police cruiser back to the station for questioning.

**{¶9}** Detective Bryan Johnson of the Stark County Sherriff's Office testified that Anderson was interviewed twice, once by Sergeant Kennedy and once by himself and that Ridick Dourm was interviewed twice by Detective Greene.

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

{¶10} In his first interview with Sergeant Kennedy, Anderson did not mention having a gun in the car at the time of the shooting. Nor did Anderson mention that he had put the gun in a bag and threw it out the car window at the trailer park. After the first interview, Anderson went out later that night to retrieve the bag with his gun and brought it back to his house.

{¶11} During the second interview, Detective Johnson testified that Anderson admitted to having a Smith & Wesson .40 caliber gun unloaded in the console of the car. The magazine was in his bag in the backseat area of the car. Anderson claimed he had the gun and magazine separated so that he could transport the firearm legally without having a permit.

{¶12} Anderson told Detective Johnson that the gun was unloaded, and he never brandished the gun in any way. Anderson admitted putting the gun in a bag and throwing it out the window while driving down Lisbon Street following the shooting. Anderson told the detective that he threw the gun out the window near the Jehovah's Witnesses church. Anderson testified that he got rid of the gun because he did not want to get in trouble. Anderson further testified that he did not throw the gun out the window near the Jehovah's Witnesses church and lied about this during the second interview because he did not want to get in trouble. Anderson gave the gun to Detective Johnson.

{¶13} Detective Johnson testified that Anderson's statements were inconsistent and the statements changed significantly from what he originally told Sergeant Kennedy and the 911 dispatcher. Although Anderson eventually admitted to Sergeant Kennedy that he went to Paris Township to obtain drugs, Anderson did not tell

Sergeant Kennedy about the firearm that was in his possession during the shooting incident.

{¶14} Although he initially told Detective Greene that shots were fired from inside Anderson's car, Ridick later admitted that he did not know if Anderson had fired his gun. 2T. at 400.

{¶15} Woods testified that on February 8, 2021, Anderson contacted him on Telegram to buy THC vape carts. Woods testified that he arranged to sell Anderson 10 THC vape carts for $300. Woods testified that he carries a gun because he sells marijuana, which is dangerous, and he had been robbed in the past.

{¶16} Woods testified that Anderson initially went to the wrong church. After he drove into the correct parking lot, Woods rolled down his window to greet Anderson. 2T. at 415. Woods then testified that,

> I seen he upped a gun so I grabbed my gun off the passenger seat and started firing as I pulled off.

2T. at 415. When asked what he was thinking when Anderson raised his gun, Woods responded, "I wasn't thinking, I just reacted, I was scared. " 2T. at 415. Woods claimed that he had acted in self-defense. 2T. at 417.

{¶17} After deliberating, the jury returned a verdict finding Woods guilty of all the indicted charges, along with the accompanying firearm specification for each count.

{¶18} At sentencing, Woods moved to dismiss the firearm specification that accompanied Count 3, Improperly Handling Firearms in a Motor Vehicle, arguing that it was specifically precluded by statute. (Sent. T. at 4). The state agreed and the trial court

dismissed the firearm specification. Woods next argued that the charge contained within Count 3 would merge as a matter of law with Count 1 and Count 2. The trial court agreed.

{¶19} The trial court sentenced Woods to an indefinite minimum prison term of five years in prison on Count 1, which was ordered to be served after the mandatory three-year sentence for the accompanying firearm specification. The trial court sentenced Woods to an indefinite minimum prison term of three years on Count 2, which was ordered to be served after the mandatory three-year sentence for the accompanying firearm specification. The trial court ordered that Woods' sentence on Count 2 be served consecutive to his sentence for Count 1. Woods was sentenced to an aggregate sentence of 14 years to 16.5 years in prison.

*Assignments of Error*

{¶20} Woods raises five Assignments of Error,

{¶21} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

{¶22} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

{¶23} "III. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR THROUGH THE INCOMPLETE, INACCURATE, AND MISLEADING JURY INSTRUCTIONS, WHICH DEPRIVED APPELLANT OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL.

{¶24} "IV. THE MODIFICATIONS TO SENTENCING FOR FIRST- AND SECOND- DEGREE FELONIES MADE BY THE REAGAN TOKES ACT VIOLATE THE

APPELLANT'S RIGHT TO JURY TRIAL, AS PROTECTED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND THE SEPARATION OF POWERS DOCTRINE EMBEDDED IN THE OHIO CONSTITUTION.

**{¶25}** "V. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."

I & II.

**{¶26}** In his First Assignment of Error, Woods argues that there is insufficient evidence to support his convictions.  Further, in his Second Assignment of Error, Woods contends that his convictions are against the manifest weight of the evidence.

**{¶27}** We note Woods is not arguing that there was insufficient evidence; rather Woods contends that the state failed to meet its burden to prove beyond a reasonable doubt that he did not act in self-defense.  [Appellant's Brief at 22].

**Standard of Appellate Review– Sufficiency of the Evidence.**

**{¶28}** The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the

elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶29}  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31.  We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'"  *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

{¶30} As stated by this court in *State v. Williams*, 5th Dist. Stark No. 2019CA00188, 2021-Ohio-443, ¶ 19:

In reviewing a sufficiency of the evidence challenge involving self-defense, we must view the evidence in a light most favorable to the State, and determine whether any rational trier of fact could have found the State disproved at least one of the elements of self-defense beyond a reasonable doubt. *State v. Davis,* 10th Dist. Franklin No. 19AP-521, 2020-Ohio-4202, ¶ 27; *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶51.[2]

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that the state disproved at least one of the elements of self-defense beyond a reasonable doubt.*

{¶31} A defendant claiming self-defense concedes that he had the purpose to commit the act, but asserts that he was justified in his actions. *State v. Davis*, 8th Dist. Cuyahoga No. 109890, 2021-Ohio-2311, ¶38. "By its terms, self-defense presumes intentional, willful use of force to repel force or to escape force." *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶54. Self-defense is a "confession and avoidance" defense in which appellant admits the elements of the crime but seeks to

---

[2] "A number of appellate districts in Ohio have reviewed whether the state disproved self-defense under the "sufficiency of the evidence" standard. *State v. Shropshire*, 2nd Dist. Montgomery No. 29108, 2021-Ohio-3848, ¶18; *State v. Vandergriff*, 1st Dist. Hamilton No. C-200282, 2021-Ohio-3230, ¶ 10; *State v. Rengert,* 5th Dist. Delaware No. 19CAA10-0056, 2021-Ohio-2561, ¶ 48; *State v. Flory*, 3rd Dist. Van Wert No. 15-20-02, 2020-Ohio-5136, ¶37; *State v. Carney*, 10th Dist. Franklin No. 19AP-402, ¶ 32. However, in *State v. Messenger*, [10th Dist. Franklin No. 19AP-879], 2021-Ohio-2044, 174 N.E.3d 425, ¶ 45, the Tenth District Court of Appeals determined that a challenge to the state's proof relative to the defendant's claim of self-defense is not subject to a review under the sufficiency of evidence standard and instead applied a 'manifest weight of the evidence' review. The Supreme Court of Ohio accepted review of *State v. Messenger* for the proposition of whether self-defense claims may be reviewed on direct appeal for sufficiency of the evidence and that matter is currently pending. *State v. Messenger*, Case No. 2021-0944." *State v. Harvey*, 4th Dist. Washington No. 21CA3, 2022-Ohio-2319.

prove some additional element that absolves him of guilt. *State v. White*, 4th Dist. Ross No. 97 CA 2282, 1998 WL 2282 (Jan. 14, 1998).

{¶32} Under a theory of self-defense, the defendant claims that (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. If the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. 2901.05(B)(1). *State v. Gatewood,* 1st Dist. Hamilton No. C-190654, 21-Ohio-3325, ¶ 68. The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893(1986). *Accord, State v. Carney,* 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶31; *State v. Staats,* 5th Dist. Stark No. 2019CA00181, ¶ 28.

### Evidence tending to support self-defense.

{¶33} The evidence presented to support self-defense is Woods' own testimony that he saw Anderson "up" a gun upon his arrival at the meeting place. Anderson admitted that he had a gun in the car and initially disposed of it after the shooting. Anderson initially lied to the police concerning the location of the shooting, the identity of the shooter, the fact that he was armed and that he had disposed of his gun. He initially lied to the police about going back to retrieve his gun.

{¶34} The evidence as to whether Dourm saw or heard Anderson with a gun is contradictory.

**Evidence tending to negate self-defense.**

{¶35} Evidence was presented that Woods was a drug dealer. Woods admitted that he often carried a gun because drug dealing is dangerous and he has been robbed in the past. Woods admitted that his purpose in meeting Anderson was to sell Anderson drugs. Woods further admitted that he armed himself before meeting with Anderson. Thus, a reasonable person could find that by engaging in criminal activity while armed, Wood was at fault in creating the circumstances that resulted in Dorum being shot.

{¶36} Nothing prevented Woods from fleeing the scene rather than wildly firing his weapon in the direction of Anderson's vehicle. If he had driven away, the shooting may not have occurred. Thus, the trier of fact could find that Woods used more force than necessary to meet the perceived threat.

{¶37} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Woods was at fault for creating the circumstances that resulted in Dourm being shot, and/or that Woods use of force was disproportionate to the perceived danger.

{¶38} No evidence was presented that Anderson was violent or had threaten individuals with a gun in the past. Woods did not testify that he was aware of any violent tendencies of Anderson. Woods did not testify that he was afraid of Anderson; rather his fear was based upon the inherent dangers associated with selling drugs, an activity that Woods freely admitted he engaged in on a regular basis. Anderson denied that he had

picked up his gun, or brandished it in any way before Woods began wildly firing at the car.

{¶39} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Woods did not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force.

{¶40} We hold, therefore, that the state met its burden of negating at least one element of self-defense; accordingly, there was sufficient evidence to support Woods' convictions.

**Standard of Appellate Review – Manifest Weight.**

{¶41} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶42} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶43} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

**{¶44}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶45}** In the case at bar, the jury heard the witnesses subjected to cross-examination. The jury heard Woods, Anderson and Dorum's admissions made to the police during each interview with the police. The jury saw the video of the incident as it occurred in real time. The jury heard Woods' attorney's arguments and explanations about the evidence and his actions. Thus, a rational basis exists in the record for the jury's decision.

**{¶46}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355, quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Woods' convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Woods' guilt. The jury rejected Woods' claim that he acted in self-defense. The jury neither lost their way nor created a miscarriage of justice in convicting Woods of the offenses.

**{¶47}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Woods was convicted.

**{¶48}** Woods' First and Second Assignment of Error are overruled.

III.

**{¶49}** In his Third Assignment of Error, Woods argues that even though not requested and, further, even though he did not object during his jury trial, the trial court committed plain error by failing to instruct the jury on Woods' duty to retreat in accordance with the amended version of R.C. 2901.09.

### Standard of Appellate Review.

**{¶50}** In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

**{¶51}** Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646 (2004). "Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.'" *State v. Barnes*,

94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. *Perry, supra*, at 118, 802 N.E.2d at 646.

{¶52} An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Cunningham*, 105 Ohio St.3d 197, 824 N.E.2d 504, 2004-Ohio-7007, ¶ 56. *See, also, State v. Adams,* 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980) (holding that a trial court's failure to specifically charge the jury on every element of an offense is not per se plain error, but could result in plain error if the failure substantially prejudiced the defendant). Appellate courts notice plain error "'with the utmost caution, under exceptional circumstances [,] and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, 2002-Ohio-68, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**Issue for Appellate Review**: *Whether the trial court committed a manifest miscarriage of justice by failing to specifically instruct the jury concerning Woods' duty to retreat pursuant to the amended version of R.C. 2901.09.*

{¶53} The trial court instructed the jury that Woods had a duty to retreat if he was at fault in creating the situation giving rise to the serious physical harm to (Ridick Dorum/Lynn Anderson), or he did not have reasonable grounds to believe and an honest belief that he was in immediate danger of death or great bodily harm, or had a reasonable means of escape from that danger other than by use of deadly force. 2T. at 441; 447; 448; 454.

{¶54} In the case at bar, Woods contends that the trial court erred by not instructing the jury in accordance with the amended version of R.C. 2901.09[3]. The amended version provides,

> (B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.

> (C) A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.

{¶55} Woods contends that under the amended version of the statute, and based upon the evidence presented at trial, he had no duty to retreat under the law, and thus incorrectly instructing the jury that Woods did have a duty to retreat or escape in the situation and he could not legally stand his ground in self- defense, was extremely prejudicial. [Appellant's Brief at 26].

{¶56} As we have discussed in our disposition of Woods' First and Second Assignments of Error, the state met its burden of proving beyond a reasonable doubt that Woods did not act in self-defense.

{¶57} We decline to find plain error because in the case at bar a manifest miscarriage of justice did not occur. Even had the jury been instructed in accordance with

---

[3] The amended version of R.C. 2901.09 became effective April 6, 2021, prior to Woods jury trial.

the amended version of R.C. 2901.09, the jury was instructed and found in the case at bar that the state had rebutted any finding that Woods had acted in self-defense beyond a reasonable doubt, without respect to whether or not he had a duty to retreat. We find the trial court's instruction did not rise to the level of plain error because the outcome of the trial would not have been otherwise had the amended no duty to retreat instruction been given. *See, State v. Colston,* 5th Dist. Muskingum No. CT2019-0076, 2020-Ohio-3879, ¶ 65; *State v. Broucker*, 5th Dist. Stark No. 2007CA00315, 2008-Ohio-2946, ¶ 38.

{¶58} Woods' Third Assignment of Error is overruled.

IV.

{¶59} In his Fourth Assignment of Error, Woods contends the Reagan Tokes Act is unconstitutional. Specifically, he argues the Reagan Tokes Act violates his constitutional right to trial by jury and due process of law, and further violates the constitutional requirement of separation of powers.

{¶60} For the reasons stated in my dissenting opinion in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate an appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, and Twelfth Districts, and by the Eighth District sitting *en banc*. *See e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4154; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470.

**{¶61}** Woods Fourth Assignment of Error is overruled.

V.

**{¶62}** In his Fifth Assignment of Error, Woods contends he was deprived of effective assistance of counsel because of his trial counsel's failure to challenge the inaccurate jury instructions as set forth in his Third Assignment of Error.

**Standard of Appellate Review**

**{¶63}** "To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. In addition, to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335 (June 15, 2020).

**Issue for Appellate Review**: *Whether there is a reasonable probability that, but for counsel's failure to request a jury instruction on Woods' no duty to retreat, the jury would have acquitted Woods.*

**{¶64}** As we have discussed in our disposition of Woods' First and Second Assignments of Error, the state met its burden of proving beyond a reasonable doubt the Woods did not act in self-defense.

**{¶65}** As we have discussed in our disposition of Woods Third Assignment of Error, even had the jury been instructed in accordance with the amended version of R.C.

2901.09, the jury was instructed, and found in the case at bar, that the state had rebutted any finding that Woods had acted in self-defense beyond a reasonable doubt, regardless of any duty to retreat.

{¶66} Accordingly, there is no reasonable probability that the jury would have acquitted Woods had trial counsel requested a jury instruction on Woods' no duty to retreat.

{¶67} Woods's Fifth Assignment of Error is overruled.

{¶68} The judgment of the Stark County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concur