[Cite as *State v. Mays*, 2022-Ohio-3659.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29051 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-2063 |
| | : | |
| ROYCE L. MAYS | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of October, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 and AMY B. MUSTO, Atty. Reg. No. 0071514, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellee

DAWN S. GARRETT, Atty. Reg. No. 0055565, 70 Birch Alley, Suite 240-24005, Beavercreek, Ohio 45440
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Royce L. Mays, appeals from his misdemeanor assault conviction following a bench trial in the Dayton Municipal Court. In support of his appeal, Mays asserts that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Specifically, Mays asserts that the evidence presented at trial established that he was acting in self-defense during the assault in question and that the State failed to present sufficient evidence to satisfy its burden under R.C. 2901.05(B)(1) to prove beyond a reasonable doubt that he was not acting in self-defense. Mays also asserts that the weight of the evidence supported his self-defense claim and that the trial court erred by failing to grant his Crim.R. 29 motion for an acquittal of the assault charge. Because the State presented video evidence at trial showing that Mays was not acting in self-defense at the time he assaulted the victim, the judgment of conviction will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On July 1, 2020, Mays was charged with assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. The charge arose from allegations that Mays assaulted a patron at the House of Bread in Dayton, Ohio, while Mays was there providing security services. Mays pled not guilty to the charge, and the matter proceeded to a bench trial.

{¶ 3} During trial, the State presented testimony from two witnesses: the executive director of the House of Bread and a bystander who witnessed the alleged assault. The

State also presented video evidence taken from the House of Bread's security camera. The defense presented testimony from one of Mays's co-workers who was working at the House of Bread during the incident in question. Mays himself also testified at trial.

{¶ 4} The testimony and evidence presented at trial established that Mays worked for a company that had contracted to provide security services for the House of Bread. The House of Bread is a non-profit community organization that provides meals to anyone in need. There is no dispute that on June 20, 2020, Mays was providing security services at the House of Bread when a regular patron named Kenya Turner attempted to enter the building while pushing a baby stroller that contained her personal items. There is also no dispute that Mays would not let Turner enter the building with the stroller.

{¶ 5} Mays testified that when he encountered Turner, it was his first day back working at the House of Bread since the COVID-19 pandemic began. Because of this, Mays testified that he was unsure whether Turner was permitted to bring her stroller into the building, as new restrictions were in place. Mays testified that he stopped Turner from entering the House of Bread and told her to "hold on" so that he could ask his co-worker if Turner could bring her stroller inside. Trial Tr. (Nov. 4, 2020), p. 88.

{¶ 6} Mays testified that as he was asking his co-worker about Tuner's stroller, Turner tried to force her way into the building by pushing her stroller into his leg. Mays also testified that Turner was yelling obscenities at him and was being violent and disorderly. Mays claimed that as a result of Turner's conduct, he decided not to allow Turner inside the House of Bread, and Turner hit him when he tried to eject her from the building. Mays testified that he thereafter hit Turner in self-defense because Turner

continued to be aggressive and because he had "to get her off [him]." Trial Tr. at 92. Mays's co-worker, Joelikia Dumas, similarly testified that Turner was holding onto Mays after they stumbled down the steps and that Mays hit Turner in an effort to get Turner off of him.

{¶ 7} A security camera from the House of Bread captured the incident on video, and the video footage was admitted into evidence as State's Exhibit 1. Due to the position of the security camera, the video footage only depicts what happened just outside the House of Bread's entrance. Therefore, on the video, Turner can be seen attempting to get her stroller inside the House of Bread and pushing the stroller toward the entrance with force. Mays is not shown on the video until he steps outside to eject Turner from the building.

{¶ 8} While ejecting Turner, Mays, who was much larger than Turner, could be seen on the video taking a hold of Turner's stroller. After Mays took hold of the stroller, the video showed Turner slapping Mays on the top of his head with her hand. Thereafter, Mays moved his body forward toward Turner, which caused both Mays and Turner to lose their balance and stumble down a short set of steps located in front of the building. The video showed that Mays held Turner's arm as they were stumbling down the steps. As Mays and Turner regained their footing, Turner could be seen moving her body away from Mays, but Mays kept a hold of Turner's arm, grabbed Turner's head with both of his hands, and then forcefully hit Turner across the face with his right hand.

{¶ 9} After Mays hit Turner in the face, the video showed Mays picking up a jelly jar that had fallen out of Turner's overturned stroller and throwing the jelly jar on the

ground near Turner. It was unclear from the video whether Mays was attempting to hit Turner with the jar. Mays testified that he threw the jar out of anger because Turner had spit at him. Both Mays and Dumas testified that Mays threw the jar at the ground and that Mays had not been aiming it at Turner. The bystander who testified for the State, Shaun Sullivan, testified that it appeared as though Mays was trying to hit Turner with the jar.

{¶ 10} The video of the incident was played several times during trial. After the State rested its case, Mays moved for a Crim.R. 29 acquittal on the assault charge. In support of the motion, Mays argued that the video evidence established that Turner had been violent with Mays and that Mays had hit Turner in self-defense during their physical altercation. Mays also argued that an acquittal was proper because the State had failed to meet its burden to present evidence establishing beyond a reasonable doubt that he had not acted in self-defense during the altercation. The trial court, however, disagreed with Mays and found that the State had satisfied its burden of proof. Accordingly, the trial court overruled Mays's Crim.R. 29 motion.

{¶ 11} At the end of trial, the trial court rejected Mays's claim of self-defense and found him guilty of assault. The trial court sentenced Mays to 180 days in jail, all of which were suspended, and to one year of basic probation. The trial court also ordered Mays to pay a $200 fine and court costs.

{¶ 12} Mays appeals from his conviction, raising two assignments of error for review. Because Mays's assignments of error are interrelated, we will address them together.

**First and Second Assignments of Error**

{¶ 13} Under his first assignment of error, Mays raises sufficiency and manifest weight arguments that pertain to his claim of self-defense. Specifically, Mays contends that the evidence presented at trial established that he was acting in self-defense when he assaulted Turner and that the State failed to present sufficient evidence to satisfy its burden under R.C. 2901.05(B)(1) to show that he was not acting in self-defense. Mays also contends that the trial court's rejection of his self-defense claim was against the manifest weight of the evidence.

{¶ 14} Under his second assignment of error, Mays contends that the trial court erred by overruling his Crim.R. 29 motion for an acquittal. Because a Crim.R. 29 motion tests the sufficiency of the evidence presented at trial, rulings on Crim.R. 29 motions are reviewed under the same standards that apply to a review for sufficiency of the evidence. *State v. Baker*, 2d Dist. Greene No. 2009-CA-62, 2010-Ohio-2633, ¶ 16; *State v. Crabtree*, 2d Dist. Champaign No. 2019-CA-1, 2019-Ohio-3686, ¶16, citing *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996). Therefore, Mays's second assignment of error also challenges the sufficiency of the evidence as it relates to his self-defense claim.

{¶ 15} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678

N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 16} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} As previously discussed, Mays was convicted of first-degree-misdemeanor assault in violation of R.C. 2903.13(A). That statute prohibits any person from "knowingly caus[ing] or attempt[ing] to cause physical harm to another or to another's unborn." R.C. 2903.13(A). "Physical harm" means any injury, illness, or other physiological impairment, regardless of its gravity or duration. R.C. 2901.01(A)(3).

{¶ 18} During his testimony, Mays admitted to physically assaulting Turner on the

day in question by grabbing her head and hitting her, but he claimed that he engaged in such conduct while acting in self-defense. "It is well established that '[t]he defense of self-defense may exonerate an accused's admitted use of force.' " *State v. Shropshire*, 2d Dist. Montgomery No. 29108, 2021-Ohio-3848, ¶ 16, quoting *State v. Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, ¶ 4. R.C. 2901.05(B)(1) specifically provides that "[a] person is allowed to act in self-defense" and that if there is evidence presented at trial "that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use force in self-defense[.]" R.C. 2901.05(B)(1).

{¶ 19} "To establish self-defense, a defendant must introduce evidence showing that: (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief that he was in imminent danger of bodily harm; and (3) he did not violate any duty to retreat or avoid the danger." *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 24 (2d Dist.), citing *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). "It is well established that a person cannot provoke a fight or voluntarily enter combat and then claim self-defense." (Citations omitted.) *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 21. "Moreover, a defendant must have a bona fide belief that the use of force was the only means of escape." *State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 42, citing *James* at ¶ 21. "Part of this entails a showing that the defendant used 'only that force that [was] reasonably necessary to repel the attack.' " *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 42, quoting *State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 55 (4th Dist.). "If the force

used was so disproportionate that it shows a purpose to injure, self-defense is unavailable." (Citation omitted.) *Lovett* at ¶ 42.

{¶ 20} In this case, Mays argues that he was acting in self-defense when he hit Turner because Turner had hit him first and because he was trying to get Turner off of him during their physical altercation. The video evidence, however, clearly showed that Mays went on the offensive after he stumbled down the stairs with Turner. The video showed that as Mays and Turner were stumbling down the stairs, Mays had a hold of Turner's arm and continued to hold on to Turner as they regained their footing at the bottom of the steps. The video also showed that Turner, who was much smaller than Mays, briefly attempted to move her body away from Mays, but that Mays kept a hold of Turner's arm, grabbed Turner's head with both of his hands, and forcefully hit Turner across the face.

{¶ 21} At the time Mays hit Turner, Turner was not posing a threat of harm to Mays that warranted Mays's hitting Turner in the manner he did. Indeed, Mays was the one who kept a hold of Turner's arm, and nothing prevented him from letting Turner go after they stumbled down the steps. Therefore, the video did not support a finding that hitting Turner in the face was reasonably necessary for Mays to protect himself or to escape from the violent situation. Instead, the video established that Mays went on the offensive and prolonged the violent situation by assaulting Turner.

{¶ 22} Because the video evidence clearly established that Mays went on the offensive when he hit Turner, the video was more than sufficient to prove beyond a reasonable doubt that Mays was not acting in self-defense when he assaulted Turner.

Given that the video evidence was sufficient in that regard, the trial court did not err by overruling Mays's Crim.R. 29 motion. In light of this, we also find that the video evidence was sufficient to convict Mays of assault and that said conviction was not against the manifest weight of the evidence, as the video evidence undoubtedly belied Mays's claim of self-defense.

{¶ 23} For all the foregoing reasons, Mays's first and second assignments of error are overruled.

## Conclusion

{¶ 24} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Stephanie L. Cook
Amy B. Musto
Dawn S. Garrett
Hon. Mia Wortham Spells
Hon. Edward Utacht, Visiting Judge