[Cite as *State v. Grover*, 2024-Ohio-505.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

IVAN JAMALL GROVER,

        Defendant-Appellant.

**CASE NO. 2022-A-0092**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 00091

---

# O P I N I O N

Decided: February 12, 2024
Judgment: Affirmed

---

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christopher R. Fortunato*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Felice Harris*, Harris Law Firm, LLC, 6480 East Main Street, Suite A, Reynoldsburg, OH 43068 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Ivan Jamall Grover ("appellant"), appeals his convictions for Felonious Assault, Improperly Discharging a Firearm at or into a Habitation or a School Safety Zone, and their respective firearm specifications following a jury trial in the Ashtabula County Court of Common Pleas. For the following reasons, we affirm.

{¶2} On February 17, 2022, the Ashtabula County Grand Jury returned a two-count indictment charging appellant with Felonious Assault, a second-degree felony, in violation of R.C. 2903.11(A)(2) and (D)(1)(a) (Count 1), with a firearm specification

pursuant to R.C. 2941.145(A), and Improperly Discharging a Firearm at or into a Habitation or a School Safety Zone, a second-degree felony, in violation of R.C. 2923.161(A)(1) and (C), with a firearm specification pursuant to R.C. 2941.145(A) (Count 2).

{¶3} On March 14, 2022, appellant entered not guilty pleas. Bond was set at $50,000.00 cash or surety or 10% with the conditions that appellant be on electronic monitoring and have no contact with the victim or co-defendant, and appellant was prohibited from purchasing, possessing, or using any controlled drugs unless prescribed.

{¶4} On April 26, 2022, the State of Ohio ("State") filed a motion for joinder of the cases against appellant and co-defendant Malikhi J. Coleman ("Coleman"). A hearing was conducted on the motion two days later. The trial court granted the motion for joinder on April 29, 2022.

{¶5} The case proceeded to a jury trial on May 24, 2022. The following facts were presented at trial:

{¶6} At the time of the shooting on April 27, 2021, Tyreese Colter ("Tyreese") was residing at 2717 Russell Road in Saybrook Township, Ashtabula County, Ohio. Tyreese was living with his grandmother, Nancy Rhodes ("Nancy"); his mother; his girlfriend; and his two children. Tyreese testified that prior to the incident, he was at the residence with his children; his grandmother; his brother, Travis Colter ("Travis"); his brother's girlfriend; and a male named David, his brother's friend. Tyreese testified that he and Ramier "Ro" Watson ("Watson") got into an argument on Facebook and wanted to fight each other. Shortly thereafter, Coleman, Watson's cousin, also messaged Tyreese on Facebook about wanting to fight him.

2

Case No. 2022-A-0092

{¶7}   Tyreese testified that he invited Coleman and Watson to his house to fight. Prior to their arrival, Coleman sent an audio message to Tyreese via Facebook saying he was going to shoot him.  Coleman, Watson, and appellant arrived at Tyreese's residence in a gold/bronze Chevy Equinox.  Nancy testified that after weeding in the backyard and placing her tools into the garage, she came out to the front of the house, when two cars came flying up.  The Chevy Equinox parked at the end of the driveway.

{¶8}   According to Tyreese, Watson drove the Equinox, Coleman was in the front passenger seat, and appellant was seated behind Watson.  According to Tyreese, upon arrival, Watson, Coleman, and appellant exited their vehicle.

{¶9}   Tyreese testified that he approached the men, who were "talking crap" at the foot of the driveway.  As they were preparing to fight, Tyreese stated that Coleman and appellant began to circle him, so he retrieved his pepper spray.  After an unsuccessful attempt at spraying Coleman, Coleman reached to retrieve a gun from the vehicle and pointed it at Tyreese.  Tyreese testified that he retrieved his gun from the garage.

{¶10}  Nancy recalled the passenger stepping out of the vehicle and reaching behind him, when someone yelled "he's got a gun."  She testified, the "[n]ext thing I know, there's bullets flying."

{¶11}  According to Tyreese, when he exited the garage, Coleman no longer had his gun in his hand, but appellant came around the car and fired two shots toward him and Nancy.  Nancy was shot in the leg.  The bullet traveled through Nancy's upper calf and required six weeks of treatment to heal.  Appellant, Coleman, and Watson ran to their vehicle, and Tyreese returned gunfire, striking Coleman.

3

{¶12} Tyreese testified that he called the police after Watson, Coleman, and appellant fled the scene. Deputy Robert Ginn Jr. ("Dep. Ginn") of the Ashtabula County Sheriff's Office was the first to arrive on the scene. He, along with Lieutenant Sean Ward ("Lt. Ward") marked with evidence placards the six Winchester brand casings in the driveway, the can of mace, and the two Wolff brand casings at the end of the driveway. Eight shell casings were found in total. Lt. Ward observed a bullet hole in the house at 2717 Russell Road. He testified, based on his training and experience, that the entry indicated the bullet was shot "straight on." Lt. Ward was able to collect the projectile from the exterior of the home.

{¶13} Dep. Ginn spoke with Tyreese about the shooting and located Tyreese's firearm, which was collected as evidence.

{¶14} When police arrived, they collected the firearm from Tyreese and assessed Nancy's injuries. Nancy was transported to the hospital via ambulance.

{¶15} Officer Jim Kemmerle ("Ofc. Kemmerle"), a former lieutenant of the detective bureau at the Ashtabula County Sheriff's Office, also responded to the shooting.[1] While en route to the scene, Ofc. Kemmerle was alerted that a gunshot victim had arrived at the nearby hospital. Ofc. Kemmerle responded to Ashtabula County Medical Center along with Lieutenant Bryan Rose of the Ashtabula County Sheriff's Office. At the hospital, Ofc. Kemmerle met with the injured individual, identified as Coleman, in the emergency room.

---

1. At the time of trial, Kemmerle was serving as an investigative agent for the Ashtabula County Board of Developmental Disabilities.

{¶16} Coleman reported to Ofc. Kemmerle that he went to Saybrook Township Park to play basketball after he got into a verbal argument with his girlfriend. Colemen informed Ofc. Kemmerle that he had called a friend to pick him up from the park. Coleman reported to Ofc. Kemmerle that while at the park, he heard people arguing and saw an older lady, presumably Nancy, in front of a residence. He was then shot in the leg. Coleman further reported that he was dropped off at the hospital by appellant and appellant's uncle, Isaac Grover. At some point during the investigation, a gunshot residue test was conducted on Coleman, which yielded negative results.

{¶17} Dep. Ginn viewed the cell phone video of the incident, which was captured by Travis. Dep. Ginn also located the Chevy Equinox driven by Watson and identified it as belonging to Watson's girlfriend, Jesueien Lebron. It was parked near Watson's residence and had five bullet holes in the passenger side. The car was towed as evidence. Lt. Ward later examined the vehicle, which had four bullet holes in the front passenger door, a bullet hole in the front passenger side A-pillar, and one in the front passenger side tire next to the valve stem.

{¶18} Shortly after the incident, Watson was interviewed by police regarding the incident. He informed officers during the interview that he was maced inside the car and that appellant was with him.

{¶19} Watson provided a different version of events on the stand. He testified that he and Tyreese exchanged words when they became entangled in a fight between their girlfriends. Watson admitted that he went to Tyreese's house to fight. He testified that he brought Coleman and "some dude from Cleveland" with him. According to Watson, Tyreese maced him and Coleman before shooting at them. According to Watson, "some

5

dude from Cleveland" returned fire when Coleman was hit in the leg. Watson repeatedly testified at the trial that "some dude from Cleveland" was not appellant.

{¶20} Kevin Belcik, a forensic scientist in the Firearms and Toolmarks Unit at the Ohio Bureau of Criminal Investigation, received eight fired cartridge cases, a projectile, and a Canik Model TP9DA 9mm Luger semi-automatic pistol bearing Serial No. 20BJ10843. Belcik testified that six of the cases were Winchester brand, and two of the cases were Wolff brand. Upon testing, Belcik determined that the Winchester casings were fired from the Canik firearm. He further testified that the two Wolff brand casings, while fired by the same firearm, were not fired by the Canik firearm. The projectile, which was removed from Coleman's leg, was determined to be fired by the Canik firearm.

{¶21} Lt. Ward later conducted a reconstruction analysis of the shooting. As part of his analysis, Lt. Ward reviewed the evidence, including the cell phone video of the shooting, and test-fired the Canik firearm to observe the ejection pattern. He further examined the bullet holes in the vehicle driven by Watson, while officers searched the interior of the vehicle. Lt. Ward testified that based upon his experience and his analysis, the first two shots, heard on State's Exhibit 1, came from the Equinox in the roadway.

{¶22} Lt. Ward testified that in addition to the fragments extracted from the vehicle, officers discovered a maroon hoody and a loaded extended magazine for a handgun. Lt. Ward also noted spray residue on the passenger side of the vehicle, presumably from the mace can.

{¶23} On May 26, 2022, the third day of trial, the State filed a notice of intent to use evidence. It included 68 photographs that were unknown to the parties. Defense counsel objected to the photographs due to the late disclosure and requested that the

6

Case No. 2022-A-0092

photographs be deemed inadmissible.  The trial court granted the motion and prohibited the State from introducing the photographs.  It is apparent from the record that there was an outburst of some degree between counsel in chambers regarding this ruling.  The trial court discussed its displeasure with the lack of professionalism by the assistant prosecutor, noting that a sheriff's deputy was in the courtroom.

{¶24}  At the conclusion of trial, the jury found appellant guilty of felonious assault with a firearm specification and improperly discharging a firearm into a habitation or school safety zone with a firearm specification. Appellant's bond was revoked.

{¶25}  A sentencing hearing was held on October 13, 2022.  The trial court sentenced appellant to eight to 12 years in prison on Count 1; three  years in prison on the accompanying firearm specification to be served consecutively and prior to the sentence on Count 1; eight years in prison on Count 2; and three years in prison on the accompanying firearm specification to be served consecutively and prior to the sentence on Count 2.  The trial court further ordered that the prison terms imposed on Counts 1 and 2 be served consecutively to each other, for an aggregate prison term of 22 to 26 years.  The trial court filed two nunc pro tunc sentencing entries on November 7, 2022, and November 15, 2022, respectively.[2]

{¶26} Appellant timely filed his notice of appeal.  Appellant subsequently requested a limited remand pursuant to App.R. 9(C).  Upon limited remand, the trial court

---

2. The November 7, 2022, entry removed the language regarding a two-year mandatory prison sentence for Counts 1 and 2.  The November 15, 2022, entry corrected the Ohio Revised Code Section for Count 2 and clarified that the prison terms imposed on Counts 1 and 2 were not mandatory and that the terms would run consecutively to each other and to the terms imposed on the firearm specifications.

7

issued its ruling, and the record was refiled. Appellant raises the following assignments of error for review:

[1.] Ivan Grover was denied his right to counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

[2.] The trial court abused its discretion in denying Ivan Grover's Motion for Mistrial.

[3.] The trial court abused its discretion by overruling Ivan Grover's objection to its 'duty to retreat' jury instruction."

[4.] Ivan Grover's convictions are against the manifest weight of the evidence.

[5.] Ivan Grover was denied the effective assistance of counsel guaranteed by the United States and Ohio Constitutions.

{¶27} In appellant's first assignment of error, he argues that he was denied his right to counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution. Specifically, appellant argues that the behavior of the assistant prosecutor was "intended to obstruct [appellant]'s constitutional right to counsel." Appellant alleges that the assistant prosecutor yelled and cursed at counsel in chambers, berated appellant's trial counsel, and postured in a way toward appellant's trial counsel which created fear of physical attack and resulted in additional security and an alternative seating arrangement.

{¶28} During the trial, in chambers, after "unintelligible and overlapping voices yelling," the trial court called in the chief assistant prosecutor. The trial court stated to her, "This is the last warning I'm giving your office about the conduct of Mr. Ameer [the assistant prosecutor] in this trial. * * * If this continues, I'm removing him as counsel in this case." The trial court further noted, "This is the last warning. The professionalism in

8

Case No. 2022-A-0092

this case has digressed to the point that I'm finding it unacceptable." The trial court then addressed the assistant prosecutor, stating, "[Y]ou will quit attacking counsel. Counsel, I'm advising all three of you to act professionally. And if I have to Mr. Ameer, I'm removing you as the prosecutor in this case."

{¶29} After the assistant prosecutor had an opportunity to talk with the Chief Assistant Prosecutor, the trial court noted, "Things have been getting heated. The Court finds the animosity displayed by Mr. Ameer against [defense counsel] and somewhat against [Coleman's defense counsel] to be unacceptable and unprofessional, and it's not going to be tolerated." The trial court told the assistant prosecutor that his "interaction with defense counsel shall, from this time forward, be absolutely professional. And I'm stating on the record that we've had to contact the Sheriff's Department. There is a uniformed deputy in this court that is prepared to assist me if there are any more outbursts that I consider to be unprofessional."

{¶30} The next day, the trial court reiterated this sentiment in relation to defense counsel's motion for a mistrial. The trial court stated, "the [c]ourt does not find [the assistant prosecutor]'s behavior to be professional or acceptable * * *." The trial court also stated, "When Mr. Ameer returned with Ms. Cantalamesa [the chief assistant prosecutor] watching from the back, as she is now, his conduct was within the parameters of professionalism from that point. And [Ms. Cantalamesa] is physically present. And * * * Sheriff Niemi is present." Defense counsel responded, "Thank you. And while I did change my seat, I will indicate also for the record that I would agree with the Court as to Mr. Ameer's behavior thereafter."

9

Case No. 2022-A-0092

**{¶31}** This Court was not privy to the contents of the conversations or the manner in which things were said. Further, we did not observe the conduct of the attorneys in this case. However, we admonish counsel that this court will not countenance behavior that would compel a trial court to take steps such as those taken in the instant matter.

**{¶32}** Given the measures taken by the trial court during the trial and the cautionary instruction provided to the jury, we conclude that the record does not support that appellant was deprived of his constitutional right to counsel or that structural error occurred in this case.

**{¶33}** Appellant separately assigns error to a claim of ineffective assistance of counsel in his sixth assignment of error; however, a brief discussion of the applicable case law is relevant at this juncture. The Supreme Court of Ohio noted in *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 6-7:

> Under *Strickland*[ *v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], a defendant claiming ineffective assistance of counsel "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674. He must also show that the ineffective representation prejudiced his case: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.
>
> Under *Strickland*, a court must apply "a heavy measure of deference to counsel's judgments," 466 U.S. at 691, 104 S.Ct. 2052, 80 L.Ed.2d 674, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

10

{¶34} "An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases 'are necessities, not luxuries.' Their presence is essential because they are the means through which the other rights of the person on trial are secured." (Footnotes omitted.) *United States v. Cronic*, 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), quoting *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

{¶35} The Supreme Court of the United States in *Cronic* "established a narrow exception to the *Strickland* ineffective assistance of counsel requirements, and held that there are rare cases involving Sixth Amendment right to counsel violations that are presumptively prejudicial." *State v. Lucas*, 2020-Ohio-1602, 154 N.E.3d 262, ¶ 36 (8th Dist.). "[A] presumption of prejudice is appropriate when counsel is 'totally absent, or prevented from assisting the accused during a critical stage of the proceeding,' or completely fails to subject the state's case to meaningful adversarial testing." *Id.,* quoting *Cronic* at 659.

{¶36} Further, the absence of counsel in a criminal trial is a structural error. *Id.* at ¶ 38. Structural error infects the entire trial process and is "characterized by the 'entire conduct of the trial from beginning to end [being] obviously affected[.]'" *Id.*, quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). "The total deprivation of the right to counsel at trial is a constitutional deprivation and structural defect that affects 'the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Id.*, quoting *Fulminante* at 310.

{¶37} The record illustrates that appellant's trial counsel was present during the entirety of the proceedings, actively represented appellant, and subjected the State's

11

case to meaningful adversarial testing. Again, while the behavior was remarkably unprofessional, the trial court went to great lengths to address trial counsel's concerns, which included additional security measures.

{¶38} Moreover, appellant's trial counsel conveyed that the assistant prosecutor's behavior *"could* taint this case in such a way that would be unable to recover." (Emphasis added.) When the trial court inquired further, trial counsel stated that due to the trial court's efforts, "I think we were able to avoid that * * *." Thus, the record does not support the contention that trial counsel was prevented from assisting appellant in any capacity. As such, appellant's first assignment of error is without merit.

{¶39} In his second assignment of error, appellant alleges that the trial court abused its discretion when it denied his motion for a mistrial.

{¶40} "A trial court must declare a mistrial only 'when the ends of justice so require and a fair trial is no longer possible.'" *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198, quoting *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). An appellate court reviews an order denying a motion for a mistrial for abuse of discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). "When the grounds for a mistrial are based on prosecutorial misconduct, the defendant must show that the alleged misconduct deprived him of a fair trial." *State v. Sbarra*, 11th Dist. Portage No. 95-P-0153, 1998 WL 156865, *3 (Mar. 20, 1998), citing *State v. Hawkins*, 66 Ohio St.3d 339, 348, 612 N.E.2d 1227 (1993), and *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987).

12

{¶41} Appellant asserts that the possibility the jury overheard the heated exchanged in chambers along with the added security and the appearance of the chief assistant prosecutor denied him a fair trial. We disagree.

{¶42} Prior to closing arguments, a hearing was held outside the presence of the jury. Appellant's trial counsel moved for a mistrial pursuant to R.C. 2945.83 due to "numerous outbursts and behavior and unprofessionalism" of the assistant prosecutor. Specifically, appellant's trial counsel discussed foul language used by the assistant prosecutor when he was dissatisfied with the trial court's discovery sanction prohibiting the introduction of photographs due to the State's late disclosure to defense counsel.

{¶43} According to appellant's trial counsel, the assistant prosecutor's outburst was loud and was overheard by others inside the courtroom, resulting in the trial court ordering the jury to be moved to the jury room. Counsel for Coleman joined appellant's motion for mistrial.

{¶44} The trial court noted for the record that court security, the Ashtabula County Sheriff's Department, including Sheriff William Niemi, were contacted regarding the assistant prosecutor's behavior. The trial court concluded that while the assistant prosecutor's behavior was neither professional nor acceptable, the court would give a "cautioning instruction to the Jury." The trial court subsequently denied the motion for mistrial.

{¶45} When proceedings resumed, the trial court provided a cautionary instruction to the jury. The instruction provided in relevant part:

> Yesterday afternoon, you may or may not have heard loud voices from my Chambers, I don't know what you heard. I can't speculate on what you heard. I'm seeing some jurors shake their head. I am going to remind you that you are

13

required by your oath to decide this case based upon the evidence and only the evidence, which consists of the testimony from the witnesses on the stand and the exhibits that you will have with you in the Jury Room. * * * Anything you heard that was not evidence is not to be considered by you * * *.

{¶46} Upon review, we conclude that the trial court did not abuse its discretion when it denied appellant's motion for a mistrial. The record does not establish that the jury overheard the heated exchange in chambers. While it is a possibility, the trial court's curative instruction was sufficient. Further, the record is devoid of any indication that the added presence of the sheriff or the chief assistant prosecutor was noticed by the jury. Because there is no evidence in the record that supports appellant's contention that the prosecutor's behavior and alleged misconduct deprived him of a fair trial, this Court finds appellant's second assignment of error lacks merit.

{¶47} In his third assignment of error, appellant asserts that the trial court erred when it overruled his objection as to its duty to retreat jury instruction.

{¶48} "The [trial] court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." *State v. Joy*, 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995).

{¶49} "The decision to issue a particular jury instruction rests within the sound discretion of the trial court." *State v. Huckabee*, 11th Dist. Geauga No. 99-G-2252, 2001 WL 253048, *6 (Mar. 9, 2001). "Absent an abuse of discretion this court will not reverse the trial court's decision to provide the jury with a specific instruction." *Id.*

{¶50} However, if the jury instructions misstate the law, an appellate court will "conduct a de novo review to determine whether the incorrect jury instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights."

14

Case No. 2022-A-0092

*State v. Barker*, 11th Dist. Portage No. 2010-P-0044, 2012-Ohio-522, ¶ 91. The reviewing court shall review the jury instructions in the context of the entire charge. *Id.* "If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results." *Id.* at ¶ 92 quoting *State v. Hardy*, 28 Ohio St.2d 89, 92, 276 N.E.2d 247 (1971)*.*

**{¶51}** Appellant argues that the trial court's failure to instruct the jury that he did not have a duty to retreat pursuant to R.C. 2901.09 was erroneous. R.C. 2901.09(B) provides in relevant part, "For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." Subsection (C) further provides, "A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety."

**{¶52}** The trial court instructed the jury as follows:

> The defendants are allowed to use deadly force in self-defense. Evidence was presented that tends to support a finding that the defendants used deadly force in self-defense. The State must prove beyond reasonable doubt that the defendants did not use deadly force in self-defense.
>
> 'Self-defense' means the defendants were not at fault in creating the situation giving rise to fight; and the defendants had reasonable grounds to believe and an honest belief, even if mistaken, that they were in immediate danger of death or great bodily harm; the defendants did not violate any duty to retreat to avoid danger; and the defendants used reasonable force.
>
> * * *
>
> The defendants had a duty to retreat if they were at fault in creating the situation giving rise to fight; or did not have

15

Case No. 2022-A-0092

reasonable grounds to believe and an honest belief that they were in immediate danger or great bodily harm; or had reasonable means of escape from that danger other than the use of deadly force.

The defendants did not have a duty to retreat if they retreated from the situation, reasonably indicated their intention to retreat from the situation and no longer participated in it; and they had reasonable grounds to believe and an honest belief that they were in immediate danger of death or great bodily harm; the only reasonable means of escape from that danger was the use of deadly force, even though they were mistaken as to the existence of that danger.

* * *

For you to find the defendants guilty, the State must prove beyond a reasonable doubt that the defendants used more force than was reasonably necessary and that the force used was greatly disproportionate to the apparent danger.

In deciding whether force was greatly disproportionate to the apparent danger, you may consider the force used shows revenge or a criminal purpose.

{¶53} There is pending litigation in the Supreme Court of Ohio regarding the retroactive application of R.C 2901.09 where the offense occurred prior to the effective date.[3] That is not the case here. The underlying offenses occurred after the effective date of the statute. Thus, the trial court should have included in the instructions that appellant had no duty to retreat if he was in a place in which he lawfully had a right to be.

{¶54} The trial court did not provide that additional language. However, upon review of the entire charge, as well as the facts of the instant case, this Court concludes that the omission of the additional language did not prejudice the defendant.

---

3. *See State v. Degahson*, 168 Ohio St.3d 1479, 2022-Ohio-4617, 200 N.E.3d 261, and *State v. Wagner*, 169 Ohio St.3d 1467, 2023-Ohio-773, 205 N.E.3d 548.

16

Case No. 2022-A-0092

**{¶55}** In *State v. Woods*, 2022-Ohio-3339, 198 N.E.3d 900 (5th Dist.), the Fifth Appellate District evaluated a similar claim wherein the defendant asserted he was prejudiced when the trial court incorrectly instructed the jury that Woods had a duty to retreat or escape in the situation. *Id.* at ¶ 55. In *Woods,* the appellate court concluded that the State had proven beyond a reasonable doubt that Woods did not act in self-defense and declined to find plain error. *Id.* at ¶ 56-57. The court concluded:

> Even had the jury been instructed in accordance with the amended version of R.C. 2901.09, the jury was instructed and found in the case at bar that the state had rebutted any finding that Woods had acted in self-defense beyond a reasonable doubt, without respect to whether or not he had a duty to retreat. We find the trial court's instruction did not rise to the level of plain error because the outcome of the trial would not have been otherwise had the amended no duty to retreat instruction been given. *See, State v. Colston*, 5th Dist. Muskingum No. CT2019-0076, 2020-Ohio-3879, 2020 WL 4345269, ¶ 65; *State v. Broucker*, 5th Dist. Stark No. 2007CA00315, 2008-Ohio-2946, 2008 WL 2572994, ¶ 38.

*Woods* at ¶ 57.

**{¶56}** The evidence at trial establishes that appellant, who was not otherwise involved in the online dispute, arrived at Tyreese's residence without invitation. Indeed, it was Watson who inserted himself in the dispute. Tyreese testified that Watson and Coleman wanted to fight. Watson, Coleman, and appellant arrived at Tyreese's residence. Appellant and Coleman circled Tyreese in his driveway. Tyreese testified he tried to mace Coleman and appellant but was unsuccessful. Tyreese then observed Coleman reach for a gun and point it at Tyreese. Tyreese retrieved his own firearm when he saw the appellant fire two shots, one bullet struck Nancy and the other struck Nancy's residence. Tyreese and Nancy both testified that appellant fired first.

17

{¶57} The record illustrates that appellant was at fault in creating the situation giving rise to the shooting by coming to Tyreese's home uninvited to assist in a fight. Further, even if Tyreese successfully maced appellant, the force appellant employed was more than reasonably necessary and was significantly disproportionate to the apparent danger of the mace. Finally, it was the appellant who fired the first two shots. As such, this Court cannot conclude that the error in instructions amounts to reversible error. Appellant's third assignment of error is without merit.

{¶58} In his fourth assignment of error, appellant argues that his convictions are against the manifest weight of the evidence because the State failed to disprove any element of self-defense pursuant to R.C. 2901.05(B)(1). We disagree.

{¶59} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶60} "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d

18

Case No. 2022-A-0092

652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶61} Appellant argues that "the State's evidence did not disprove any element of self-defense beyond a reasonable doubt"; therefore, his convictions are against the manifest weight of the evidence. Appellant argues that the State failed to prove that appellant was at fault and asserts that he had no duty to retreat from the end of the driveway or curb because he was lawfully permitted to be there.

{¶62} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). This is because the trier of fact is in the best position to "observe and evaluate the demeanor, voice inflection, and gestures of the witnesses." *State v. Dach*, 11th Dist. Trumbull Nos. 2005-T-0048, 2005-T-0054, 2006-Ohio-3428, ¶ 42. "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶63} As discussed above, appellant was charged with felonious assault and improperly discharging a firearm into a habitation with respective firearm specifications. The jury heard the testimony of several witnesses subjected to cross examination. The jury viewed the cell phone video that captured a portion of the incident, body camera footage after the shooting, an interview of Watson with police, several photographs from

19

the scene, and a diagram of the reconstruction of the shooting. The jury heard testimony from Watson regarding the events of the shooting, which differed from the video interview,

**{¶64}** Appellant argues that the jury lost its way when it did not conclude that appellant was acting in self-defense. The jury was free to believe all or none of the testimony regarding self-defense. After hearing and evaluating the evidence presented, the jury rejected appellant's claim that he acted in self-defense.

**{¶65}** Moreover, the jury, after consideration of this evidence, acquitted the co-defendant after hearing and seeing the same evidence. Therefore, this Court concludes that the jury did not lose its way. The record supports the jury's conclusion, and their decision does not create a miscarriage of justice. As such, appellant's convictions are not against the manifest weight of the evidence. Appellant's fourth assignment of error is without merit.

**{¶66}** In his final assignment of error, appellant asserts that he was denied the effective assistance of counsel. He cites three issues for review. Specifically, he claims his counsel was ineffective for failing (1) to challenge the constitutionality of R.C. 2903.11(A)(2) and 2923.161(A)(1); (2) to move to dismiss the indictment based on selective prosecution; and (3) to argue self-defense during closing argument.

**{¶67}** As noted above, in order to support a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland*, *supra*. First, he must show that counsel's performance was deficient, which requires appellant to show that his trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Id.* at 687. He must also show that the ineffective representation prejudiced his case, i.e., "that there is a

20

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. *See also Bradley*, *supra*, at paragraphs two and three of the syllabus.

{¶68} Appellant cannot satisfy either prong of the *Strickland* test.

{¶69} "[S]tatutes enacted in Ohio are presumed to be constitutional." *State v. Williams*, 88 Ohio St.3d 513, 521, 728 N.E.2d 342 (2000). "This presumption of constitutionality remains unless it is proven beyond a reasonable doubt that the legislation is clearly unconstitutional." *Id*.

{¶70} Appellant first argues that his counsel was ineffective for failing to raise an argument as to the constitutionality of R.C. 2903.11(A)(2) (felonious assault) and 2923.161(A)(1) (improper discharge of a firearm) as applied in this case. Appellant argues in his brief that "in the case of consensual fighting or mutual combat, where one party is arbitrarily declared a victim and not charged with any offense, the statutes are unconstitutional as applied." Appellant argues that because Tyreese was not charged with felonious assault for the injuries caused to Coleman by his return fire, R.C. 2903.11(A)(2) and 2923.161(A)(1) are unconstitutional. The prosecutor's decision to charge Coleman and appellant for felonious assault of Nancy where the evidence supports that appellant fired his weapon first and not Tyreese for returning fire, does not render the statutes unconstitutional as applied. Moreover, the prosecutor's decision not to charge Tyreese with felonious assault resulting in injuries to Coleman does not otherwise prejudice appellant.

21

Case No. 2022-A-0092

**{¶71}** Appellant next asserts the statutes as applied in this case violate his due process and equal protection rights. He relies upon *In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, 950 N.E.2d 528, ¶ 30, wherein the Supreme Court of Ohio concluded:

> The plain language of the statute makes it clear that every person who engages in sexual conduct with a child under the age of 13 is strictly liable for statutory rape, and the statute must be enforced equally and without regard to the particular circumstances of an individual's situation. R.C. 2907.02(A)(1)(b) offers no prosecutorial exception to charging an offense when every party involved in the sexual conduct is under the age of 13; conceivably, the principle of equal protection suggests that both parties could be prosecuted as identically situated. Because D.B. and M.G. were both under the age of 13 at the time the events in this case occurred, they were both members of the class protected by the statute, and both could have been charged under the offense. Application of the statute in this case to a single party violates the Equal Protection Clause's mandate that persons similarly circumstanced shall be treated alike.

**{¶72}** This case is factually distinguishable. *In re D.B.* involved statutory rape, a strict liability offense. Both parties were under the age of 13 and engaged in sexual conduct. Because the offense was a strict liability offense, the application of the statute to only D.B. violated the Equal Protection Clause. The offenses charged in the instant matter are not strict liability offenses. This is a significant distinction.

**{¶73}** The Court stated:

> The facts of this case provide an example of the temptation for prosecutors to label one child as the offender and the other child as the victim. Based apparently upon the theory that D.B. forced M.G. to engage in sexual conduct, the state alleged that D.B., but not M.G., had engaged in conduct that constituted statutory rape. However, while the theory of D.B. as the aggressor was consistent with the counts alleging a violation of R.C. 2907.02(A)(2), which proscribes rape by force, this theory is incompatible with the counts alleging a violation of statutory rape because anyone who engages in sexual conduct with a minor under the age of 13 commits

22

statutory rape regardless of whether force was used. Thus, if the facts alleged in the complaint were true, D.B. and M.G. would both be in violation of R.C. 2907.02(A)(1)(b).

The prosecutor's choice to charge D.B. but not M.G. is the very definition of discriminatory enforcement. D.B. and M.G. engaged in sexual conduct with each other, yet only D.B. was charged. The facts of this case demonstrate that R.C. 2907.02(A)(1)(b) authorizes and encourages arbitrary and discriminatory enforcement when applied to offenders under the age of 13. The statute is thus unconstitutionally vague as applied to this situation.

(Footnote omitted.) *In re D.B.* at ¶ 25-26.

{¶74} The Supreme Court's holding in *In re D.B.* did not conclude that the prosecution solely of D.B. violated his constitutional rights as to the forcible rape which is not a strict liability offense. Neither offense for which appellant was ultimately convicted are strict liability offenses. Therefore, appellant's reliance upon *In re D.B.* is misplaced.

{¶75} Appellant also argues that his trial counsel was ineffective for failing to file a motion to dismiss on the grounds of selective prosecution.

{¶76} "A presumption of regularity supports prosecutorial decisions and unless there is clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties." *State v. Spivey*, 7th Dist. Mahoning No. 00 CA 106, 2002 WL 418373, *10 (Mar. 15, 2002). "If a prosecutor has probable cause to believe that an accused committed an offense, the decision whether to prosecute, and what charges to file or bring before a grand jury, generally rests entirely within the prosecutor's discretion." *Id.* A prosecutor's discretion is not unfettered, and the "decision whether to prosecute may not be based upon 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.*, quoting *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).

23

Case No. 2022-A-0092

> Merely showing that "another person similarly situated was not prosecuted is not enough; a defendant must demonstrate actual discrimination due to invidious motives or bad faith." *State v. Freeman* (1985), 20 Ohio St.3d 55, 58, 485 N.E.2d 1043. Intentional discrimination will not be presumed from a showing of differing treatment. *Id.* A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. * * * *Armstrong* * * * [at] 463 * * *. As the court stated in *Armstrong,* "the standard is a demanding one." *Id.* See *State v. Getsy* (1998), 84 Ohio St.3d 180, 702 N.E.2d 866.

*Spivey* at *11.

{¶77} Thus, to prove a claim of selective prosecution, a defendant must show that a "prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Armstrong* at 465, quoting *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

{¶78} Nothing in the record supports the proposition that the prosecutor's decision not to pursue charges against Tyreese for felonious assault had a discriminatory effect and was motivated by a discriminatory purpose. Moreover, appellant has failed to show invidious motive or bad faith of the prosecutor. As such, trial counsel was not ineffective for failing to allege selective prosecution in the trial court.

{¶79} Lastly, appellant claims his trial counsel was ineffective for failing to argue self-defense in her closing argument.

{¶80} Closing argument, including the waiver thereof, is a matter of trial strategy. *State v. Elswick*, 11th Dist. Ashtabula No. 2001-A-0035, 2002-Ohio-3365, ¶ 34, citing *State v. Burke*, 73 Ohio St.3d 399, 405, 653 N.E.2d 242 (1995).

{¶81} "'When evaluating trial counsel's conduct, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

24

assistance.'"'" *State v. Brown*, 11th Dist. Trumbull No. 2023-T-0010, 2023-Ohio-2540, ¶ 10, quoting *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81, quoting *Strickland* at 688.  This court will not "'"second-guess decisions of counsel which can be considered matters of trial strategy."'"  *Id.*, quoting *State v. Stroud*, 11th Dist. Ashtabula Nos. 2022-A-0032, 2022-A-0033, 2022-A-0034, 2023-Ohio-569, ¶ 50, quoting *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.).

{¶82}  While trial counsel did not use the word self-defense in her closing, she did attempt to capitalize on the defense's theory that there was a lack of evidence establishing appellant as the shooter.  She also told the jury, "It was Travis and Tyreese's own poor decisions that led to [Nancy] getting injured."  While trial counsel did not argue self-defense in her closing, that decision was a tactical one.  Therefore, the decision to pursue an alternative avenue does not amount to ineffective assistance of counsel.

{¶83} Because appellant cannot meet both prongs of the *Strickland* test, appellant's fifth assignment of error is without merit.

{¶84}  For the reasons set forth above, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.

25

Case No. 2022-A-0092